YOUNGSTOWN SHEET & TUBE COMPANY ET AL., APPELLEES, *v.* MAYNARD, DIRECTOR OF ENVIRONMENTAL PROTECTION, APPELLANT.
(Thirty-six cases.)

4

(Nos. 83AP-1014 through -1049—
Decided June 7, 1984.)

*Squire, Sanders & Dempsey* and *James F. Allen,* for appellees United States Steel Corp. and Ferro Corp.

*Fuller & Henry, Louis E. Tosi* and *Douglas G. Haynam,* for appellees Cleveland Electric Illuminating Co., Dayton Power & Light Co., Ohio Edison Co., Toledo Edison Co. and General Motors Corp.

*Porter, Wright, Morris & Arthur, Martin S. Seltzer* and *Christopher R. Schraff,* for appellees Jones & Laughlin Steel Corp., Armco, Inc., Cincinnati Gas & Electric Co., Republic Steel Corp., Ohio Valley Electric Corp., Ohio Power Co. and Columbus & Southern Ohio Electric Co.

*Anthony J. Celebrezze, Jr.,* attorney general, *Martha E. Horvitz* and *Monica L. Fries,* for appellant.

REILLY, J. These are appeals by the Director of the Ohio Environmental Protection Agency (hereinafter "director" or "OEPA") from an order of the Environmental Board of Review (hereinafter "board" or "EBR"), which required the director to respond to public comments made in response to rule-making proposals and to adopt an administrative rule which would allow interested parties to petition the director to make changes in the rules governing the handling of hazardous waste in Ohio.

The director asserts four assignments of error, as follows:

"1. The Board erred in holding that it had jurisdiction to review the non-adoption of a rule by the Director.

"2. The Board erred in finding that the Director's failure to adopt a rule providing persons a right to petition for changes to the hazardous waste rules was unlawful.

"3. The Board erred in finding that the Director's failure to adopt a rule providing persons a right to petition for changes to the hazardous waste rules was unreasonable.

"4. The Board erred in holding that the Ohio Environmental Protection Agency is required to respond to comments made during the public hearing and comment period of rule-making proceedings."

The director, in October 1980, August 1981 and April 1982, proposed the adoption of rules to govern the handling of hazardous waste in Ohio. These rules were authorized by R.C. 3734.12, and their adoption was governed by R.C. Chapter 119, which, in ad-

dition to other provisions, required the director to give notice of the proposed rules and conduct a public hearing on the proposal. R.C. 119.03.

R.C. Chapter 3734 was enacted in 1980 in response to the federal Resource Conservation and Recovery Act of 1976, as amended, Sections 6901-6987, Title 42, U.S Code. It was intended to establish a comprehensive waste management program for Ohio, which upon receiving approval of the United States Environmental Protection Agency, would operate in the state of Ohio in lieu of the federal legislation. See, e.g., Legislation Note (1982), 7 U. Dayton L. Rev. 567.

In order to receive initial United States Environmental Protection Agency approval, a state plan must be consistent with and substantially equivalent to the federal program. Accordingly, R.C. 3734.12 provides, in part:

"The director of environmental protection shall adopt and may modify, suspend, or repeal rules in accordance with Chapter 119. of the Revised Code, which shall be consistent with and substantially equivalent to the regulations promulgated under the 'Resource Conservation and Recovery Act of 1976,' 90 Stat. 2806, 42 U.S.C. 6921, as amended * * *."

The United States Environmental Protection Agency has defined the substantial equivalent standard to mean that the state program:

"1. Controls a nearly identical universe of hazardous wastes generated, transported, treated, stored and disposed of in the State as would be controlled by the Federal program.

"2. Covers all types of hazardous waste management facilities existing in the State as of the date of interim authorization.

"3. Is based on standards that provide substantially the same degree of human health and environmental protection as the Federal standards and is ad-

ministered through procedures that are substantially equivalent to the procedures used in the Federal program." See, e.g., 45 Fed. Reg. 6751, 6753.

At the public hearing conducted by the director prior to the adoption of the proposed rules, numerous interested parties commented that the state program would not be substantially equivalent to the federal program without the adoption of a rule providing the right to petition the director for changes in the state program. Without indicating the reasons for refusing to adopt such a "right to petition rule," the director adopted the proposed rules without a rule providing the right to petition.

On appeal to the EBR, the board held that it was unlawful and unreasonable for the director to fail to adopt a rule providing interested parties with the right to petition for changes to the Ohio hazardous waste program. The board further held that the notice and hearing provisions of R.C. 119.03, applicable to the rule-making authority vested in the director, carried the implied requirement that the director respond to significant comments made by the parties to the proceeding before the director. The board concluded that the comments raised by the parties herein were significant, and that it was error for the director to fail to respond to such comments. Consequently, the EBR ordered the director to adopt a right to petition rule.

The director first challenges the jurisdiction of the EBR to review the non-promulgation of a right to petition rule. Appeals to the EBR are governed by R.C. 3745.04 which states, in part:

"As used in this section, 'any person' means any individual, any partnership, corporation, association, or other legal entity, or any political subdivision, instrumentality, or agency of a state, whether or not the individual or legal entity is an applicant for or holder of a

license, permit, or variance from the environmental protection agency, and includes any department, agency, or instrumentality of the federal government that is an applicant for or holder of a license, permit, or variance from the environmental protection agency.

"As used in this section, 'action' or 'act' includes the adoption, modification, or repeal of a rule or standard, the issuance, modification, or revocation of any lawful order other than an emergency order, and the issuance, denial, modification, or revocation of a license, permit, lease, variance, or certificate, or the approval or disapproval of plans and specifications pursuant to law or rules adopted thereunder.

"Any person who was a party to a proceeding before the director may participate in an appeal to the environmental board of review for an order vacating or modifying the action of the director of environmental protection or local board of health, or ordering the director or board of health to perform an act. The environmental board of review has exclusive original jurisdiction over any matter which may, under this section, be brought before it. * * *"

The director asserts that the failure or refusal to adopt a right to petition rule is not an "action" within the meaning of the statute, and that the EBR was therefore without jurisdiction to review such issue.

The General Assembly, however, in drafting R.C. 3745.04 chose to illustrate rather than define an appealable action, thereby vesting the board with jurisdiction over acts of the director beyond the adoption, modification or repeal of a rule. Past decisions of this court illustrate that the broad definition of appealable acts contained in the statute is to be liberally construed in favor of appeals to the EBR. See, *e.g., Cain Park Apts.* v. *Nied* (June 25, 1981), Franklin App. No. 80AP-817 *et seq.,* unreported.

In the present case, the director adopted certain rules setting standards for the treatment, transportation, storage and disposal of hazardous waste in Ohio, without adopting any provision facilitating the review and modification of such standards. This court concludes that the board had appellate jurisdiction to consider whether it was reasonable and lawful for the director to establish such standards without providing a right to petition for their review and modification.

Therefore, the director's first assignment of error is not well-taken.

In the director's second assignment of error, it is asserted that the board erred in finding that the failure to adopt a right to petition rule was unlawful.

The Resource Conservation and Recovery Act, cited *supra* (hereinafter "RCRA"), was intended by Congress to establish a comprehensive set of regulations to govern the management of hazardous waste in this country. See, *e.g.,* Costle & Beck, Attack on Hazardous Waste: Turning Back the Toxic Tide (1980), 9 Cap. U. L. Rev. 425. In Sections 6921 through 6925, Title 42, U.S. Code, Congress directed the Administrator of the United States Environmental Protection Agency to establish criteria for the identification and listing of hazardous waste, to promulgate regulations governing generators and transporters of hazardous waste and owners and operators of facilities for the storage and disposal of hazardous waste, and to establish a permit system controlling the treatment, storage and disposal of hazardous waste.

RCRA also provided for the implementation of state-level programs, to operate in lieu of the federal system. Such state programs are subject to federal approval, which is governed by the provisions of Section 6926, Title 42, U.S. Code. That section reads, in part:

"(b) Authorization of State program

"Any State which seeks to administer and enforce a hazardous waste program pursuant to this subchapter may develop and, after notice and opportunity for public hearing, submit to the Administrator an application, in such form as he shall require, for authorization of such program. Within ninety days following submission of an application under this subsection, the Administrator shall issue a notice as to whether or not he expects such program to be authorized, and within ninety days following such notice (and after opportunity for public hearing) he shall publish his findings as to whether or not the conditions listed in items (1), (2), and (3) below have been met. Such State is authorized to carry out such program in lieu of the Federal program under this subchapter in such State and to issue and enforce permits for the storage, treatment, or disposal of hazardous waste unless, within ninety days following submission of the application the Administrator notifies such State that such program may not be authorized and, within ninety days following such notice and after opportunity for public hearing, he finds that (1) such State program is not equivalent to the Federal program under this subchapter, (2) such program is not consistent with the Federal or State programs applicable in other States, or (3) such program does not provide adequate enforcement of compliance with the requirements of this subchapter.

"(c) Interim authorization

"Any State which has in existence a hazardous waste program pursuant to State law before the date ninety days after the date of promulgation of regulations under sections 6922, 6923, 6924, and 6925 of this title, may submit to the Administrator evidence of such existing program and may request a temporary authorization to carry out such program under this subchapter. The Administrator shall, if the evidence submitted shows the existing State program to be substantially equivalent to the Federal program under this subchapter, grant an interim authorization to the State to carry out such program in lieu of the Federal program pursuant to this subchapter for a twenty-four month period beginning on the date six months after the date of promulgation of regulations under sections 6922 through 6925 of this title."

R.C. 3734.12 is the enabling legislation in Ohio which was enacted to bring about the implementation of a hazardous waste program for Ohio█

Manifestly, it was the intent of the General Assembly in the enactment of R.C. 3724.12 to effectuate a state hazardous waste program which is consistent with and substantially equivalent to the federal program. Notwithstanding the underlying legislative intent of the statute, however, the director has no greater rule-making authority than that which can reasonably be read from the terms of the statute.

The statute clearly and definitely authorizes the promulgation of rules in certain enumerated areas concerning specific topics. There is no provision in R.C. 3734.12 which directs the promulgation of a right to petition rule. Under the maxim *expressio unius est exclusio alterius,* "the expression of one thing implies the exclusion of another," the director is without the legal duty to promulgate a right to petition rule. *State, ex rel. Curtis,* v. *DeCorps* (1938), 134 Ohio St. 295 [12 O.O. 96]; *Erie Cty. Bd. of Edn.* v. *Rhodes* (1984), 17 Ohio App. 3d 35, 38. This analysis is particularly compelling when it is considered that the federal right to petition rule originates, not in the regulations promulgated by the United States Environmental Protection Agency but in a

statutory grant. See Section 6974, Title 42, U.S. Code. It is reiterated that there is no comparable statutory grant in the Ohio hazardous waste program.

Thus, although the state program as it now stands may not receive federal approval due to the lack of a right to petition rule, such deficiency is for the General Assembly to correct through proper enabling legislation, not for this court or the Environmental Board of Review.

Accordingly, the director's second assignment of error is well-taken.

The director contends in the third assignment of error that the board erred in finding that it was unreasonable for the director to fail to promulgate a right to petition rule. This assertion is also well-taken.

When reviewing an action of the director, the board cannot substitute its judgment for that of the director. This court has stated that "[i]t is only where the board can properly find from the evidence that there is no valid factual foundation for the Director's action that such action can be found to be unreasonable." *Citizens Committee* v. *Williams* (1977), 56 Ohio App. 2d 61, 70 [10 O.O.3d 91]. Hence, an action by the director which is in accordance with law will be upheld unless there is an abuse of discretion based upon the evidence.

Moreover, it is generally held that, absent a statutory provision which specifically places the burden of proof, such burden in an administrative action is upon the party asserting the affirmative issue. See, *e.g., Long* v. *Div. of Watercraft* (1963), 118 Ohio App. 369 [25 O.O.2d 262]; *Mid-Ohio Health Planning Fedn.* v. *Certificate of Need Review Bd.* (April 1, 1982), Franklin App. No. 81AP-958, unreported. In the present context, this provides the rules promulgated by the director with a presumption of reasonableness, and places the burden upon those challenging the rules to show that there was no factual basis upon which the director could act as he did, and, hence, that the action of the director is an abuse of the director's discretion.

There has been no showing of an abuse of the director's discretion in refusing to adopt a right to petition rule. The appellees allege that they will be unduly burdened by Ohio rules that are allowed to lag behind changes in the federal hazardous waste program, and that a right to petition rule is essential to maintain a state program which is consistent with and substantially equivalent to the federal program. The director, on the other hand, asserts that a right to petition rule would increase the agency's caseload beyond its capacity, and would in fact increase the lag between the federal and state programs. On the basis of the conflicting interests shown in the evidence, it was not an abuse of the director's discretion to refuse to promulgate a right to petition rule.

Consequently, the director's third assignment of error is also well-taken.

In the director's final assignment of error, it is asserted that the board erred in imposing upon the director the duty to respond to comments made by the public in response to rule-making proposals.

The hearing procedure to which the director must comply in order to promulgate administrative rules is contained in R.C. 119.03(C). That section provides, in part:

"On the date and at the time and place designated in the notice, the agency shall conduct a public hearing at which any person affected by the proposed action of the agency may appear and be heard in person, by his attorney, or both, may present his position, arguments, or contentions, orally or in writing, offer and examine witnesses, and present evidence tending to show that the proposed rule, amendment, or rescission, if adopted or effectuated, will be unreasonable or unlawful."

With regard to the purpose of such administrative hearing, this court has stated:

"* * * Under Section 119.03, Revised Code, the hearing is to provide an opportunity for opponents of a proposed regulation to express their views as to the wisdom of the proposal and to present evidence with respect to its illegality. The administrative agency has no obligation to support the reasonableness of its proposal — except in the sense of the practical desirability of rebuttal, especially in the light of the limitation on evidence on an appeal under Section 119.11, Revised Code. It may be, and probably is, true that at some of these hearings no one appears — opponents or proponents. The agency need not then prove to itself that there are grounds to justify the proposal." See *Ohio Grape Growers* v. *Bd. of Liquor Control* (1961), 115 Ohio App. 243, 244-245 [20 O.O.2d 320].

Nevertheless, the board determined that the right to be heard included the implied right to receive a response to comments, stating the reason for the agency's agreement or disagreement with such comments. There is no such requirement in the statute, nor can such requirement be implied from any of the terms of the statute. Thus, it was error for the board to impose a requirement on the director to respond to public comment. *Ohio Grape Growers, supra; Middletown* v. *Nichols* (1983), 9 Ohio App. 3d 135.

Thus, the fourth assignment of error is well-taken.

For the foregoing reasons, the second, third and fourth assignments of error are sustained. The first assignment of error is overruled. The order of the Environmental Board of Review is reversed, and the cause is remanded for further proceedings.

*Order reversed and cause remanded.*

MOYER and CASTLE, JJ., concur.

CASTLE, J., retired, of the Twelfth Appellate District, was assigned to active duty under authority of Section 6(C), Article IV, Constitution.