OPINION
Defendant-appellant David L. Viel, who pled no contest to driving under the influence, appeals the decision of the Belmont County Court West which denied his motion to suppress the results of his blood alcohol content test. For the following reasons, the decision of the trial court is affirmed.
 STATEMENT OF FACTS
On February 17, 1998, appellant was stopped by the Ohio State Highway Patrol for driving 85 m.p.h. in a 65 m.p.h. zone. Upon approaching the vehicle, the trooper detected the odor of alcohol and noticed that appellant's eyes were bloodshot and his speech was slurred. Appellant was asked to exit his vehicle. As appellant complied with this request, the trooper noticed a bottle of vodka in appellant's pocket. The trooper then administered a series of field sobriety tests, which appellant failed. Appellant was placed under arrest. He consented to a blood alcohol content test which produced a .156 reading. Appellant was cited for speeding and for driving under the influence of alcohol in violation of R.C.4511.19 (A) (1), (3).
Thereafter, appellant filed a motion to suppress which alleged in pertinent part that the calibration solution had not been properly approved by the director of the Ohio Department of Health. Thus, he claimed that any results produced on a machine calibrated with this solution are unreliable. In support of his suppression motion, appellant relied upon the case of State v.Beardsley (M.C. 1997), Case No. 97-TRC-4176. The trial court overruled appellant's motion stating that the municipal court case out of Marietta was irrelevant to the case at bar. Nonetheless, the court noted that appellant was free to request an evidentiary hearing on the issue.
Rather than accept the court's offer of an evidentiary hearing, appellant renewed his suppression motion, submitted a portion of the transcript from Beardsley and asked the court to make a decision based upon this proffer. On July 15, 1998, the trial court again overruled appellant's request as it was not persuaded that the Beardsley transcript demonstrated that the method of approval used by the director of health was deficient, especially regarding the batch of solution in the case at bar.
Since appellant was unsuccessful in having the test results suppressed, he entered a no contest plea to the charge of driving under the influence. In return, the state agreed to dismiss the speeding charge. On August 19, 1998, appellant was sentenced to 10 days in jail with all days suspended upon completion of a three-day treatment program. He was also fined $500 plus court costs, and his license was suspended for 180 days. Appellant filed the within timely appeal, challenging the court's denial of his suppression motion.
 STANDARD OF REVIEW
Our function in reviewing a trial court's decision on a motion to suppress is to determine whether the factual findings are supported by competent, credible evidence. State v. Mills
(1992), 62 Ohio St.3d 357, 366. As we make this determination, we are mindful that the trial court occupies a superior position from which to weigh the evidence. State v. DeHass (1967), 10 Ohio St.2d 230,231. Then, we independently evaluate as a matter of law whether the trial court's decision complied with the applicable legal standard and applied the correct law to the facts. State v.Lloyd (1998), 126 Ohio App.3d 95, 100.
 OVERVIEW OF APPLICABLE LAW
In filing a motion to suppress, the defendant has the initial burden to set forth specific allegations of impropriety. Mere conclusory allegations in a motion to suppress breath testing procedures are not sufficient. State v. Gregory (Sept. 23, 1999), Columbiana App. No. 96-CO-89, unreported, 4. When the defendant challenges the admissibility of a breath test on the grounds that the Department of Health failed to comply with a regulation, the state need only demonstrate substantial compliance, rather than strict compliance, with that regulation. Defiance v. Kretz
(1991), 60 Ohio St.3d 1, 3. Once the state has illustrated substantial compliance, the burden shifts back to the defendant to show that he was prejudiced by the failure of the state to literally comply with the regulation. State v. Plummer (1986),22 Ohio St.3d 292, 295.
The Department of Health is run by a director who has various statutorily listed duties, including the following:
 "determine, or cause to be determined, techniques or methods for chemically analyzing * * * breath * * * [,] approve satisfactory techniques or methods, ascertain the qualifications of individuals to conduct such analyses, and issue permits to qualified persons authorizing them to perform such analyses." R.C. 3701.143.
The regulation with which appellant contends that the director of health failed to comply is Ohio Adm. Code 3701-53-04 (A) (1). This regulation provides that a breath testing instrument shall be checked every seven days with a calibration solution that has been "approved" by the director of health. Hence, the director must approve calibration solutions. How this approval takes place is not specified. It should be noted that courts give great deference to an administrative agency's interpretation of its own rules and regulations. State v. Dye (Apr. 28, 1999), Jefferson App. No. 97-JE-1, unreported, 4, citing Celebrezze v. National Lime StoneCo. (1994), 68 Ohio St.3d 377, 382.
 ASSIGNMENTS OF ERROR
Appellant sets forth three assignments of error which will be discussed together as he raises the same general argument within all three. These assignments provide as follows:
 "THE TRIAL COURT ERRED TO THE PREJUDICE OF THE DEFENDANT-APPELLANT WHEN IT OVERRULED HIS MOTION TO DISMISS AND SUPPRESS THE BREATH-ALCOHOL CONTENT TEST."
 "THE TRIAL COURT ERRED TO THE PREJUDICE OF THE DEFENDANT-APPELLANT WHEN IT OVERRULED HIS MOTION FOR RECONSIDERATION OF HIS MOTION TO SUPPRESS AND PROFFER OF EVIDENCE."
 "THE TRIAL COURT ERRED TO THE PREJUDICE OF THE DEFENDANT-APPELLANT BY FINDING THAT THE STATE HAD MET ITS BURDEN OF PROOF REGARDING THE RELIABILITY OF THE SOLUTION USED FOR THE CALIBRATION OF BAC DATAMASTER."
Appellant argues that the trial court should have granted his motion to suppress because the director of health did not properly approve the calibration solution. Particularly, he contends that the target value for the solution was arrived at by unreliable means. Appellant states that the director of health merely approved the solution based upon the representation of the laboratory which provided the solution to the state. Appellant criticizes the state for its failure to introduce evidence as to what scientific procedures were utilized to establish a reliable target value for the calibration solution. Specifically, appellant argues that the state's production of the certificate of approval will not meet the threshold for substantial compliance where it is alleged that the procedures underlying the approval contained in the certificate were unreliable, citing Evid.R. 702 and 803 (6).
The state responds by indicating that it demonstrated substantial compliance with the regulation requiring that calibration solutions be approved by the director of health. The machine which produced appellant's breath test results was calibrated with batch 49 of solution which was obtained from Miami Valley Regional Crime Laboratory. In response to appellant's suppression motion, the state submitted an affidavit from Miami Valley which established the target value of batch 49. The state also filed the certificate of approval for batch 49 which verified the target value and was signed by the director of health.
 ANALYSIS
In order to show substantial compliance with Ohio Adm. Code3701-53-04 (A) (1), it has been determined that the state need only illustrate that the solution was approved by the director of health and the test was conducted in accordance with standard procedures provided in the regulations. State v. Taxis (Dec. 3, 1998), Summit App. No. 19038, unreported, 2 (holding that Dr. Sutheimer's feelings on the sampling procedures does not negate the fact that the director of health approved the solution). See, also, State v. Monsour (Dec. 5, 1997), Portage App. No. 96-P-0274, unreported. In the case at bar, the state submitted proof that batch 49 had been approved by the director of health. SeeBarnesville v. Wayble (Mar. 31, 2000), Belmont App. No. 98-BA-36, unreported (stating that a certificate signed by the director initially demonstrates that the solution was approved).
As aforementioned, the director of health is vested with the authority to determine the techniques and methods to be implemented when analyzing the alcohol content of a person's breath. The only requirement imposed by the regulations as related to the calibration solution used in breath testing machines is that the director "approve" the solution. Absent a specific regulation regarding the method of approving the target value of the calibration solution, this court must give great deference to the director's interpretation and application of the regulations. Dye, Jefferson App. No. 97-JE-1 at 4, citingCelebrezze, 68 Ohio St.3d at 382. We presume the director's decision to approve the solution was reasonable since the transcript submitted by appellant himself showed a factual basis for approval. See Youngstown Sheet Tube v. Maynard (1984),22 Ohio App.3d 3, 8.
Appellant's entire argument in the trial court revolved around the Beardsley case. He submitted a portion of the transcript from that case which contained the testimony of the deputy director of health, Dr. Sutheimer. As the state points out, this testimony is not supportive of appellant's arguments. Initially, we point out that any testimony unfavorable to the state focused on two batches of solution, which were totally different from the batch in the case at bar. Additionally, the testimony makes it clear that it was the state's practice to test four samples of each batch four times as a quality control measure to ensure that the manufacturer's established target value was accurate. Therefore, the record does not support appellant's assertion that the director of health approved the solution based solely upon the representations of the manufacturer.
Furthermore, although Dr. Sutheimer opined that testing four samples four times was an inadequate method to initially establish a target value of a batch of calibration solution, it is important to note that the state's testing was not done to establish a target value but was done to verify the manufacturer's preestablished target value. See State v. Raudebaugh (Mar. 10, 2000), Wood App. No. WD99018, WD99033, WD99019, WD99032, unreported (conducting an analysis in a similar case). Moreover, Dr. Sutheimer's opinion inBeardsley was based upon the fact that certain manufacturers denied the state access to their testing procedures. He believed that more testing by the state was needed since he lacked knowledge of the number and type of tests performed by particular manufacturers. He then specifically stated that he had no problems with Miami Valley Regional Crime Laboratory as they had granted him access to their laboratories and methodologies. As previously mentioned, Miami Valley is the manufacturer of batch 49.
Hence, the testimony proffered by appellant in lieu of an evidentiary hearing contained sufficient information for the court to find that appellant's entire argument was based upon an inapplicable ruling made by a municipal court on facts that were wholly divergent from the facts in the case at bar.[1] As such, the state was not required to produce additional evidence on the procedures used to assure that the solution possessed a reliable target value. See State v. Dunn (Sept. 14, 1999), Ross App. No. 98CA2468, unreported. Cf. State v. Miller (Dec. 15, 1998), Marion App. No. 99842, unreported.
There existed substantial, if not technical, compliance with the applicable regulation requiring that calibration solution be approved by the director of health. The trial court had before it competent, credible evidence supporting its decision to overrule appellant's suppression motion.
For all of the foregoing reasons, the decision of the trial court is affirmed.
Cox, P.J., concurs, Waite, J., concurs.
 __________________ J. VUKOVICH, JUDGE
[1] Appellant relies upon two other cases which are similar toBeardsley. These cases are State v. Manzanares (M.C. 1998), Case No. 98-TRC-037 and City of New Philadelphia v. Wolpe (M.C. 1998), Case No. TRC9607745A-D. However, of these cases were subsequently reversed on appeal. See State v. Manzanares (Apr. 16, 1999), Wood App. No. WD-98-033, unreported and State v. Wolpe (Sept. 29, 1998), Tuscarawas App. No. 98AP030008, unreported. The failure to advise this court of appellate disposition of Wolpe, which was released months prior to the filing of appellant's brief, is contrary to the mandate of S.Ct.R.Rep.Op. 2 (G) (3). Pursuant to this rule, counsel has an obligation to make a diligent search for any later appellate dispositions.